UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

NINA KINDER, an individual,
IRVING KINDER, an individual,

      Plaintiffs,

          vs.                         Case No.

PUNTA GORDA HMA, LLC,
a Florida limited liability company,
HEALTH MANAGEMENT ASSOCIATES, INC.,
a foreign profit corporation,

      Defendants.

_____/

## COMPLAINT

      Plaintiffs, Nina Kinder and Irving Kinder (collectively, the "Plaintiffs"), sue

Defendant, Punta Gorda HMA, LLC, a limited liability company, d/b/a Charlotte Regional

Medical Center, and Health Management Associates, Inc., a foreign profit corporation,

and allege as follows:

## JURISDICTION AND THE PARTIES

      1.     This is an action for declaratory and injunctive relief pursuant to Title III of

the Americans With Disabilities Act, 42 U.S.C. §§12181, et seq. (hereinafter the "ADA"),

and for declaratory and injunctive relief, as well as damages pursuant to § 504 of the

Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq (hereinafter, the

Rehabilitation Act).   This Court is vested with original jurisdiction under 28 U.S.C. §§

1331 and 343.

      2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1343.

3.      This action is within the jurisdiction of the Court:

A.      Plaintiff, Nina Kinder ("N. Kinder") is a resident of Punta Gorda, Florida, and is *sui juris*. She is a qualified individual with disabilities under the ADA and Rehab Act in that she is profoundly deaf. N. Kinder's preferred method of communication is American Sign Language ("ASL").

B.      Plaintiff, Irving Kinder ("I. Kinder") is also a resident of Punta Gorda, Florida, and is *sui juris*. He is a qualified individual with disabilities under the ADA and Rehab Act in that he is profoundly deaf. I. Kinder's preferred method of communication is American Sign Language ("ASL").

C.      Defendant, Health Management Associates, Inc., is a foreign profit corporation which owns and operates Charlotte Regional Medical Center.

D.      Defendant, Punta Gorda HMA, LLC, d/b/a Charlotte Regional Medical Center (the "Hospital"), is a Florida limited liability company, with its principal place of business in Charlotte County, Florida located at 809 East Marion Avenue, Punta Gorda, Florida. Punta Gorda HMA, LLC is a subsidiary of Health Management Associates, Inc.

4.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b):

A.      The events giving rise to this claim occurred in this Judicial District.

B.      The real property which is the subject of this action may be found in this Judicial District.

## FACTUAL BACKGROUND

5.      Over the past several years, Plaintiffs have been patients of the Hospital, and have a need to return in the future. During this time period, Plaintiffs have been admitted in-patient through the Hospital emergency department or have been treated in

the Hospital emergency department ("Hospital ED").

6.      On or about October 28, 2006, I. Kinder was suffering from acute pain in his stomach and went to the Hospital ED.  Ultimately I. Kinder was diagnosed with Appendicitis and scheduled for surgery to have his appendix removed.  Prior to his surgery, the Hospital ED doctor and nurse tried to explain by talking, but I. Kinder was not able to fully understand.  As a result of the Hosptial's failure to provide a live qualified interpreter or other form of effective communication, I. Kinder was forced to contact a friend who was minimally versed in ASL, and nowhere close to being a qualified interpreter.  Although I. Kinder remained in the Hospital for three (3) days after his surgery, at no time during this post-op period, or during his discharge, did the Hospital provide a live qualified interpreter or other form of effective communication.[1]

7.      On or about January 11, 2011, I. Kinder contacted the Hospital through Sorenson Video Relay Service ("SVRS").[2]  SVRS enables deaf and hard-of-hearing callers to conduct video relay calls through a qualified ASL interpreter who is on the telephone call with both parties.  He spoke with a nurse who advised him that he might be having a stroke and to come to the Hospital ED immediately.  During the phone call I. Kinder advised the Hospital nurse that he was deaf, communicated in ASL, and needed an interpreter.  The Hospital nurse advised I. Kinder that he did not need a live interpreter as the Hospital had Video Relay Interpreting ("VRI").

8.      Upon arrival at the Hospital ED, I. Kinder was never provided with the VRI. Instead, Hospital nurses and doctors tried to communicate with I. Kinder through lip reading and some note writing.  N. Kinder, who accompanied her spouse to the

---

[1] There is an assumption in the Hospital medical records that I. Kinder and N. Kinder can read lips fully to communicate and that is inaccurate.
[2] At the time of the phone call I. Kinder was experiencing symptoms of severe numbness in his left arm and leg.

9.      On April 10, 2009, N. Kinder went to the Hospital ED with high blood pressure and a severe headache.  She remained in the Hospital ED for 24 hours. During her admission to the Hospital ED, Plaintiffs requested a live qualified interpreter. During N. Kinder's stay, Plaintiffs had to renew their request for a live qualified interpreter, but the Hospital ED doctor and nurse ignored the request and continued to try and communicate by relying on lip reading and writing notes.

10.      During the early morning of March 10, 2011, N. Kinder went to the Hospital ED with her spouse.  At the time, her blood pressure was high and she was vomitting.  When Plaintiffs arrived at the Hospital ED, I. Kinder gave a note to the staff person at the admissions desk indicating that they were deaf, communicated in ASL, and requested a qualified sign language interpreter.  Although the Hospital ED staff person indicated an interpreter would be provided and Plaintiffs were admitted into the Hospital ED, an interpreter never arrived.  For the remainder of the morning, N. Kinder continued to vomit and had acute pain in her stomach.

11.      Later that day, both the Hosptial ED nurse and doctor approached Plaintiffs with a note indicating they needed to insert an I.V. in her neck, but Plaintiffs did not understand why this needed to be done.  When Plaintiffs renewed their request for

the qualified sign language interpreter, the Hosptial ED nurse brought in a VRI laptop, called the service, but was unable to get an answer.  Ultimately, N. Kinder was forced to sign medical paperwork that she did not understand, and stayed overnight in the Hosptial ED, where her condition was stabilized even though she continued to endure stomach pain.

12.     The following morning N. Kinder was admitted in-patient, where she would stay in the Hospital for six (6) days while her sodium and potassium levels were being monitored.  However, when N. Kinder was admitted in-patient, she did not request an interpreter because she felt that her previous requests had been ignored and that it would be futile to make an additional request.  Instead, she resigned herself to trusting Hospital nurses and doctors and just hoping for the best.  As a result, she attempted to communicate by writing notes during the remainder of her stay, but could only understand a small part of what was going on.  During her stay, the Hospital never provided a qualified interpreter, and only on the day of her discharge, was there a Hospital nurse that could sign.

13.     Without any effective communication, the Plaintiffs did not completely understand what treatment was being provided, whether any procedures were being performed, or what procedures were being performed.  As a result, the Plaintiffs were unable to effectively ask questions or voice concerns about the risks and/or benefits of recommended treatments or procedures.

14.     Plaintiffs were ignored, humiliated, and not treated equally as other patients who are not hearing impaired by the Defendants.

15.     During the above time periods when Plaintiffs were under Defendants' care, they were required to sign consent and other medical forms before medical

treatment and/or procedures were administered. These requests were made without a qualified sign language interpreter being present. Although Plaintiffs signed the forms that were presented to them, they did not fully understand what treatment or procedures were being performed or what they were consenting to, but felt they had no other options as their requests for interpreters were ignored.

16. As a result of the foregoing, Defendants have willfully, knowingly, and intentionally discriminated against Plaintiffs in violation of the ADA and Rehabilitation Act.

### COUNT I VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Paragraphs 1 through 16 are realleged and incorporated as if fully set forth herein.

17. Pursuant to 42 U.S.C. §12181(7) and 28 CFR § 36.104, the Hospital is a place of public accommodation that provides health care services to the general public on both an in-patient and out-patient basis.

18. The Defendants have intentionally discriminated, and continue to discriminate, against the Plaintiffs by denying them access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Hospital, as prohibited by 42 U.S.C. § 12181 et seq.

19. The Defendants are in violation of 42 U.S.C. 12181 et seq., and 28 CFR 36.302 et seq., and are discriminating against the Plaintiffs as a result of, inter alia, the following violations at the Hospital:

       A. Failing to maintain policies and procedures to insure compliance with Title III of the ADA, and specifically policies that provide equal access to effective communication for individuals with disabilities;

B.      Failing to ensure that communications with Plaintiffs were as effective as communications with other non disabled patients; and

C.      Failing to provide auxiliary aids and services, including a qualified sign language interpreter, for discussions regarding the risks and benefits of recommended procedures and treatments.

20.     Upon information and belief, these violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

21.     Plaintiffs have been denied access to, and the benefits of, services, programs and activities of the Hospital and have otherwise been discriminated against by the Defendants because of the ADA violations set forth *supra*.

22.     Plaintiffs' counsel is entitled to recover those attorneys' fees, experts' fees, costs and expenses incurred in this case from the Defendants, pursuant to 42 U.S.C. § 12205.

23.     Pursuant to 42 U.S.C. 12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief requested herein.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendants and request the following injunctive and declaratory relief:

A.      Accepting jurisdiction of this case and ordering the Defendants to cease discrimination against Plaintiffs and other hard of hearing or deaf patients at its Hospital;

B.      Ordering the Defendants to promulgate and comply with policies and procedures to ensure that hard of hearing or deaf patients are not discriminated against at its Hospital;

C.      Ordering the Defendants to promulgate and comply with procedures to ensure that the Defendants will provide and pay for qualified interpreter services when needed by individuals who are deaf or hard of hearing in all services offered at its Hospital;

D.      Ordering the Defendants to promulgate and comply with procedures to ensure that the Defendants will notify individuals who are deaf or hard hearing of their right to effective communication.  This notification will include posting explicit and clearly worded notices that state that Defendants will provide qualified sign language interpreters, TTYs and/or communication services to ensure effective communication with deaf or hard hearing persons at its Hospital;

E.      Awarding Plaintiffs their reasonable costs and attorneys' fees;

F.      Awarding such other relief the Court deems proper; and

G.      Retaining jurisdiction of this case until the Defendants have fully complied with the orders of this Court.

## <u>COUNT II VIOLATION OF THE REHABILITATION ACT</u>

Paragraphs 1 through 16 are realleged and incorporated as if fully set forth herein.

24.      Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination against people with disabilities by recipients of federal funding, and provides that "no otherwise qualified handicapped individual…shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

25.     Plaintiffs are deaf and their disability substantially limits major life activities, including their ability to effectively communicate with others who do not know sign language.  Therefore, Plaintiffs are considered to be individuals with a disability under Section 504 of the Rehabilitation Act, as amended.  See 29 U.S.C. §706(8).

26.     Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for Defendants' services at all times material hereto.  Further, the Hospital is a recipient of federal financial assistance.

27.     The Defendants actions and omissions at its Hospital described above violated the Plaintiffs' rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

28.     The Defendants intentionally discriminated against Plaintiffs at its Hospital through its actions and omissions above by being aware of its obligations to address Plaintiffs' needs and federally protected rights, and by failing to act at a time when it was required to protect Plaintiffs' rights.

29.     Plaintiffs have suffered severe emotional distress and will continue to suffer distress and damages due to Defendants' violations of Section 504.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendants and request the following injunctive and declaratory relief:

A.      Accepting jurisdiction of this case and declaring that the Defendants have intentionally discriminated against Plaintiffs at its Hospital in violation of the Rehabilitation Act;  Ordering the Defendants to cease discrimination against Plaintiffs and other hard of hearing or deaf patients at its Hospital;

B.      Ordering the Defendants to promulgate and comply with policies and procedures to ensure that hard of hearing or deaf patients are not discriminated against at its Hospital;

C.      Ordering the Defendants to promulgate and comply with procedures to ensure that the Defendants will provide and pay for qualified interpreter services when needed by individuals who are deaf or hard of hearing in all services offered at its Hospital;

D.      Ordering the Defendants to promulgate and comply with procedures to ensure that the Defendants will notify individuals who are deaf or hard hearing of their right to effective communication.  This notification will include posting explicit and clearly worded notices that state that Defendants will provide qualified sign language interpreters, TTYs and/or communication services to ensure effective communication with deaf or hard hearing persons at its Hospital;

E.      Awarding Plaintiffs their reasonable costs and attorneys' fees;

F.      Awarding compensatory damages to Plaintiffs;

G.      Awarding such other relief the Court deems proper; and

H.      Retaining jurisdiction of this case until the Defendants have fully complied with the orders of this Court.

Respectfully submitted,

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Plaintiffs
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555

By:___\s\ Charles D. Ferguson_____
      **Miguel M. de la O**
      Florida Bar No. 0822700
      delao@dmmllaw.com
      **Charles D. Ferguson**
      Florida Bar No. 0741531
      ferguson@dmmllaw.com